Appeal from District Court, Erath County; J. B. Keith, Judge.

Louis Venturi was convicted of possessing intoxicating liquor for sale, and he appeals. Reversed and remanded.

Oxford & Johnson, of Stephenville, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

BAKER, J. Appellant was charged by indictment in four counts, but the court in his charge to the jury submitted the first and second counts only—the first count charging defendant with unlawful possession of liquor for the purpose of sale, and the second count with unlawfully manufacturing liquor capable of producing intoxication. The court charged the jury as follows: "If you find the defendant guilty under the first count in the indictment, you will return a verdict into the court according to your finding, but if you find him not guilty, under the first count, then you will pass to consideration of the charge against him contained in the second count in the indictment," and prepared a form for the jury's verdict under both counts of the indictment.

The jury returned a verdict of guilty, as follows:

"We, the jury, find the defendant guilty as each count in the indictment and assess his punishment at confinement in the penitentiary for one year in each count."

And thereupon the court entered judgment against the defendant upon the first count in the indictment, and ordered that he be punished at confinement in the penitentiary for a term of one year, and ignored the verdict on the other count.

Appellant complains of this action of the court, and in effect contends that the jury returned a verdict against the defendant charging him with two separate and distinct felony offenses, one with unlawfully possessing intoxicating liquor, and the other with unlawfully manufacturing intoxicating liquor, and that the court after receiving said verdict had no authority to change the verdict of the jury in the judgment and make it apply to only one count.

[1, 2] This court has repeatedly held that a defendant could not be convicted both with having in his possession intoxicating liquor and with manufacturing intoxicating liquor under the same indictment. Now the question arises as to whether or not the court is authorized to eliminate the verdict of the jury in part, after they had found the defendant guilty of possession and manufacturing whisky, and render judgment on the count charging possession, and ignore the verdict on the count for manufacturing whisky? We think not. We think the ver-

dict of the jury, finding defendant guilty on each count, made it impossible for the learned trial judge to tell whether the jury intended to find defendant guilty on both counts with aggregate penalty of two years, or whether the jury intended by their verdict to say that the evidence would support a conviction in either count and leave it to the court to say which count he would apply the verdict in the judgment, as he attempted to do.

The verdict is clearly defective for lack of certainty in these regards. We find no authority exactly in point, but believe the statement of this court in Guest v. State, 24 Tex. App. 530, 7 S. W. 242, would apply, and the verdict being uncertain and defective, the trial judge was not authorized to uphold it and attempt to apply it to either of said counts. He should have declined to receive it and sent the jury back. The charge should have told the jury that they could not find defendant guilty only upon one count, and should this have been done the error would probably not have occurred.

For the errors above discussed, we are of the opinion that this case should be reversed and remanded, and it is accordingly so ordered.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

---

### FRAZIER v. TANKERSLEY et al. (No. 6839.)

(Court of Civil Appeals of Texas. April 1, 1925. On Motion for Rehearing, June 3, 1925.)

1. Vendor and purchaser ⟷265(4)—Purchaser can rely on records in determining whether vendor's lien notes have been assigned.

Purchaser is not bound to go beyond the records to ascertain whether a payee of vendor's lien notes has assigned the notes, and, in absence of anything to the contrary, he can rely on what the record shows with reference thereto.

2. Cancellation of instruments ⟷35(3) — Payee of vendor's lien notes whose rights have been divested need not be made party to suit to cancel deed.

Payee of vendor's lien notes need not be made a party in a suit by purchaser at sale foreclosing deed of trust to cancel a deed securing the vendor's lien notes, where the payee's interest was divested by sale foreclosing the deed of trust.

3. Vendor and purchaser ⟷265(4)—Purchaser may assume that judgment canceling deed securing vendor's lien notes also canceled notes.

Since a vendor's lien note depends upon the deed securing it for its validity, purchaser has right to assume that judgment canceling

deed also canceled the vendor's lien, in absence of anything to apprize him of the transfer of the lien.

**4. Vendor and purchaser ⬅═265(4)—Purchaser without notice of assignment of vendor's lien notes procures title superior to unrecorded assignment of lien.**

Where assignment of a vendor's lien note was not recorded, and deed securing such note had been canceled by purchaser at sale foreclosing deed of trust, which deed was executed after but recorded prior to the deed securing the vendor's lien notes, *held,* that purchaser from purchaser at foreclosure sale procured a title superior to rights of the assignee of .the unrecorded assignment.

### On Motion for Rehearing.

**5. Vendor and purchaser ⬅═265(4)—Not incumbent on grantee of subsequent deed to show lack of notice of prior deed, which had been legally canceled of record when grantee acquired title.**

Where, at time plaintiff acquired deed from purchaser at sale foreclosing deed of trust, record disclosed that a deed executed prior to trust deed, but subsequently recorded, and securing vendor's lien notes, had been canceled, *held,* that was not incumbent on plaintiff to prove that one to whom trust deed was given did .not know of existence of such prior deed, which had been canceled.

Appeal from District Court, Irion County; C. E. Dubois, Judge.

Action by Fayette Tankersley and another against A. M. Frazier. From a judgment for plaintiffs, defendant appeals. Affirmed.

Wear, Wood & Wear and Frazier & Averitte, all of Hillsboro, and J. A. Thomas, of San Angelo, for appellant.

Collins & Jackson, of San Angelo, for appellees.

BAUGH, J. This is an appeal from a judgment of the district court of Irion county, awarding title to a section of land in that county to Fayette Tankersley, removing cloud from same, and granting him a permanent injunction to restrain the sheriff of Irion county from executing an order of sale of said land in · favor of appellant issued out of the district court of Hill county.

The material facts are substantially as follows: On June 1, 1909, C. P. Lewellyn conveyed the land in question to H. M. Taylor, taking in part payment therefor three vendor's lien notes for $1,501.86 each, due respectively in one, two, and three years after date. This deed was recorded August 10, 1909. Meantime, Lewellyn on July 26, 1909, executed a deed of trust on this land to Frank Meeks, trustee, to secure payment of a note of that date for $1,000, payable to S. A. Meeks, due January 1, 1910. L. T.

Akers acquired the Meeks note and lien, and on February 8, 1911, sued Lewellyn and Meeks to foreclose the same. Lewellyn contested the suit, but the land was ordered sold and was on May 7, 1912, bought in by L. T. Akers. Soon thereafter Akers discovered the record of the deed from Lewellyn to Taylor, and sued Taylor to recover the land and cancel his deed from Lewellyn. On September 4,' 1912, judgment of the district court of Irion county was entered canceling said deed and awarding the land to Akers. On October 3, 1912, L. T. Akers and wife for valuable consideration conveyed said land to Tankersley, who immediately went into possession and has continued in possession thereof, under fence, cultivating and using same and paying taxes thereon. On March 15, 1921, he paid the balance due the state for purchase money, and obtained patent therefor. This, in substance, is the appellees' claim of title to the land in controversy.

Appellant's claim is based upon the following facts and circumstances: On February 10, 1911, C. P. Lewellyn sold the H. M. Taylor $1,501.86 note No. 3, which matured June 1, 1912, to Lamm & Co., a corporation, and on June 1, 1912, he sold the same company note No. 2, which was then one year past due. Thereafter on January 11, 1913, he made a written transfer of said notes and lien to Lamm & Co. for a recited consideration of the "release from a debt which I owe Lamm & Co., corporation, for $300." This transfer, however, was never recorded in Irion county. On April 9, 1913, appellant, A. M. Frazier, who had acquired these Taylor notes from Lamm & Co., brought suit upon them in the district court of Hill county against H. M. Taylor, A. P. Lewellyn, L. T. Akers, J. S. Richards, G. W. Brashears, Frank Meeks, and S. A. Meeks. Richards and S. A. Meeks were later dismissed and judgment obtained on April 15, 1918, against Taylor for $2,700 ·on the notes and foreclosure of the vendor's lien against all defendants. Akers appealed; the trial court's judgment was affirmed by the Court of Civil Appeals (220 S. W. 426), and writ of error refused by the Supreme Court on January 19. 1921. For further statement, we copy from the trial court's findings of fact as follows:

"Fourteenth. The plaintiff, Fayette Tankersley, knew nothing of the transfer of the Taylor notes to Lamm & Co. by Lewellyn, nor did he know anything about the defendant's, Frazier's, acquisition of said notes or claims made thereunder until the sheriff of Irion county had posted notice of his intention to sell his land under the first order of sale issued to Irion county out of the district court of Hill county, which was in the late fall of 1922.

"In purchasing said lands he relied on the records, of Irion county, Tex., which had been

examined for him by his agent and attorney in fact, and showed that all the interest in the lands of C. P. Lewellyn, the grantor in the Taylor deed, had been purchased by L. T. Akers under judgment of foreclosure out of the district court of Tarrant county and that the Taylor deed had been canceled September 4, 1912, by the district court of Irion county, Tex., in the suit of L. T. Akers v. H. M. Taylor.

"Fifteenth. I find further in this relation that Lamm & Co. was negligent in failing to take a written transfer of the vendor's lien securing the Taylor notes at the time it purchased the same, or at least prior to the date at which Fayette Tankersley purchased the lands in question, and in failing to file the same for record in Irion county, Tex., so as to thereby inform all parties dealing with such lands of the nature and character of its claim.

"That, having acquired the Taylor notes from Lamm & Co. after their maturity the defendant, A. M. Frazier, is chargeable with responsibility for such company's negligence.

"Sixteenth. That the defendant, Frazier, was guilty of negligence, in that, after having acquired possession of the written assignment of the lien from C. P. Lewellyn to Lamm & Co., he failed and refused to file the same for record in Irion county, and thereby disclose the nature and character of his claim.

"Seventeenth. The defendant, Frazier, was apprised of the fact that the deed to H. M. Taylor had been canceled by judgment of the district court of Irion county through the pleadings of the defendant Akers filed in the Hill county case September 1, 1913, and further advised through the same medium of the fact that all the right, title, and interest in and to said lands of the grantor in said deed, C. P. Lewellyn, had been sold out and purchased by L. T. Akers under the Tarrant county district court judgment, and yet he failed to procure written transfers of the lien securing the Taylor notes, disclosing a transfer thereof either to Lamm & Co. or to himself and to file the same for record in Irion county.

"Under the facts disclosed here such failures on his part constituted negligence.

"Eighteenth. The plaintiff, Tankersley, having discovered by examination of the Irion county court and deed records that the deed from C. P. Lewellyn to H. M. Taylor had been canceled by judgment of a court of competent jurisdiction in the suit of L. T. Akers v. H. M. Taylor, and that Akers had acquired the interest of C. P. Lewellyn, the grantor in said deed, through purchase under judgment of foreclosure in the district court of Tarrant county, had the right to rely on the information so discovered under the facts and conditions shown to have existed at the time, and was not guilty of negligence of any character, but met all requirements of the law with reference to the making of inquiries as to matters suggested by the records."

Based upon the facts stated and his findings above set out, the trial court reached the following conclusions of law:

"Conclusions of Law.

"First. The plaintiff, Fayette Tankersley, having had peaceable and adverse possession of the section of land in question, claiming title under deeds duly registered, and under a chain of title in which the deed from Lewellyn to Taylor does not appear as a link, cultivating, using, and enjoying the same under his own fence lines and paying taxes thereon each year as they accrued for more than five years after the defendant, Frazier's, cause of action accrued, has acquired good title thereto under the five-year statute of limitation and the defendant, A. M. Frazier, is not therefore entitled to foreclose any lien thereon.

"Second. Because of the negligence of Lamm & Co. and the defendant, Frazier, in failing to take and record in Irion county a transfer or transfers of the vendor's lien securing the Taylor notes, such defendant is not entitled to foreclose his lien against the plaintiff, Fayette Tankersley, nor to judgment on either the notes or the Hill county judgment against him, because he purchased the lands in reliance on the record, and without any actual notice of such claims, lien and equities.

"Third. The plaintiff, Fayette Tankersley, is entitled to judgment and decree perpetuating the injunction against the enforcement of any lien against the lands in question, canceling and removing the defendant's, Frazier's, claims under the Hill county district court judgment and the notes merged therein, as a cloud on his title, and the defendant, A. M. Frazier, is not entitled to recover anything on his cross-action seeking the establishment of his notes and judgment as a claim against the lands and foreclosure of the vendor's lien; the facts found and now found indicating that the plaintiff has good title to the land as an innocent purchaser, in good faith and for value, without notice of the defendant, Frazier's, claims or equities, and not only so but that he has perfected a clear and distinct title thereto under the five-year statute of limitation."

### Opinion.

We are of the opinion that the judgment of the trial court should be affirmed on his finding and conclusion that Tankersley was an innocent purchaser for value from Akers, without notice of any outstanding liens or claims in appellant, or in those under whom he claimed. Accordingly, we pretermit a consideration of the question of title by limitation.

[1, 2] It is well settled that under our registration laws a purchaser of real estate is not bound to go beyond the records to ascertain whether or not the payee of a vendor's lien note has made any assignment thereof. Rogers v. Houston, 94 Tex. 403, 60 S. W. 869; Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54; Biswell v. Gladney (Tex. Civ. App.) 182 S. W. 1168. In the absence of notice to the contrary, he can rely upon what such records show with reference thereto. It is not denied that when Tankersley purchased the lands in question he had no actual notice that the notes sued upon by appellant had ever been transferred by Lewellyn to any one. While Lewellyn was the record holder of these notes, a judgment of the district court of Irion county canceled the deed from Lewellyn to Taylor in which said notes were described. Appellant in-

sists, however, that neither he nor Lewellyn was a party to that suit. Appellant did not appear in the record chain of title, nor was his claim known to Tankersley. Nor was it necessary for Lewellyn to be made a party to that suit, because he had already been divested of whatever title, lien, or interest he had in the land by the sale under foreclosure occasioned by his own act in giving a mortgage on the land, and which suit was contested by him. If Lewellyn had in fact owned the Taylor notes at the time the judgment against him foreclosing the deed of trust securing the Meeks note was rendered —and from the record Tankersley had a right to assume that he did—he would have been barred from thereafter asserting any such lien. Rogers v. Houston, supra. Tankersley likewise found from the record that the deed to Taylor had been canceled. The validity of this judgment as to Taylor is not questioned. That being true, Tankersley could deal with the title as though no such conveyance had been made. See Hair v. Wood, 58 Tex. 77.

[3] The lien securing appellant's notes depended upon the deed to Taylor for its validity, and when that deed was canceled by judgment the purchaser had a right to assume in the absence of anything to apprise him of its transfer, that the lien was likewise destroyed. As concisely stated by Judge Brown in Moran v. Wheeler, supra:

"It is the policy of the law to require that all matters affecting the title to lands should be placed upon the public records, so that one who seeks to purchase it may safely judge of the validity of the title. When a purchaser who seeks to buy land has examined the records of titles, and finds nothing to indicate that there is an adverse claim, and he is not in possession of any facts that would put him upon inquiry as to any matter not of record, he has the right to presume that any person claiming an adverse right would have placed the same upon record, and that there is none. But in this instance the case is stronger for the land and mortgage bank, for it appeared that the person in whom the adverse claim had existed had released it, and there was nothing to notify him that any other person had become entitled to the lien.

"It was within the power of the plaintiff to have taken a written assignment of the vendor's lien and to have placed it upon record as the law required, and thus to have secured himself against the acts of the original owner of the lien. The land and mortgage company had no such opportunity for guarding against the wrong; and it must be held that he who neglects the performance of a duty enjoined, or the exercise of a privilege granted for his security, must suffer the loss, rather than one who was not in a position to secure that protection."

[4] This same rule is approved and emphasized in the case of Rogers v. Houston, supra. See, also, Thomas v. Bank, 60 Tex. Civ. App. 133, 127 S. W. 844. We think this principle applies and governs the case before us. Appellant and his assignor, Lamm & Co., were charged with knowledge that the lien securing their notes was subject to registration. Had they taken such transfer and recorded it, their rights would have been protected. Having neglected to perform that duty, and by reason thereof Tankersley having purchased the land for a valuable consideration without notice, appellant must suffer the loss.

Appellee has cited numerous other authorities sustaining his contention, but we think the principles enunciated in Moran v. Wheeler, Rogers v. Houston, and Thomas v. Bank control here. In addition to the judgment canceling the deed to Taylor, on which deed the life of the notes in question depended, Tankersley found from the record that all of Lewellyn's interest in the land had been divested by foreclosure sale, and this at a time when he was the record holder of the lien. These facts and circumstances, in our opinion, as conclusively disposed of Lewellyn's interest, so far as Tankersley was concerned, or the record title to the land was concerned, as if Lewellyn had executed a release of the lien, after he had transferred the notes, and such release had been placed of record, as was the case in Moran v. Wheeler. The judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

[5] Appellant has filed an exhaustive motion for rehearing, in which he earnestly urges, among other things, that inasmuch as the deed from Lewellyn to Taylor was recorded on August 10, 1909, only 15 days after Lewellyn executed the deed of trust to Meeks, and long before Ackers, who was appellee's grantor, acquired any rights under said deed of trust, Ackers was charged with full notice thereof, and that the burden rested, not only upon Ackers, but upon all claimants under him, to prove that at the time Meeks took the deed of trust on these lands on July 26, 1909, he had no actual notice that Lewellyn had prior thereto conveyed the lands to Taylor, citing Ackers v. Frazier (Tex. Civ. App.) 220 S. W. 426, and authorities therein cited. The rule announced in that case is not questioned. It is well established in Texas. But it is not applicable here. If this were a controversy between Tankersley and some holder or claimant under Taylor, it would undoubtedly apply. But in the instant case there is no subsequent claimant under Taylor. On the other hand, when Tankersley examined the record, he found that the deed from Lewellyn to Taylor had been canceled, and whatever title Taylor may have obtained thereunder reverted to Lewellyn, and Lewellyn's title, whatever it was, had been obtained by Ackers under foreclosure. If the Taylor deed had not been canceled by decree of the dis-

trict court, an entirely different question would be presented. Even though this deed recited the execution of vendor's lien notes, the record showed these notes to be in the hands of Lewellyn at the time all his interest in the land was sold under the deed of trust, and also at the time the Taylor deed was canceled. If in fact these notes had been owned by Lewellyn, as shown by the record, they would necessarily have fallen along with the Taylor deed, and Tankersley's title to the land is treated as though no such deed had ever been executed. The record having disclosed these facts, it was not incumbent upon Tankersley to prove that Meeks, to whom the deed of trust was given, did not know of the existence of the deed to Taylor, which had been legally canceled of record when Tankersley bought. Appellant's motion is therefore overruled.

Motion overruled.